# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SUSAN TENDLER**

**VERSUS**

**HOBBY LOBBY STORES, INC.**

**CIVIL ACTION**

**NO. 16-361-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on a Motion for Summary Judgment, ("Motion," Doc. 49), filed by Plaintiff Susan Tendler ("Plaintiff" or "Tendler"). Defendant Hobby Lobby Stores, Inc. ("Defendant" or "Hobby Lobby") opposes the Motion, (Doc. 57), and Plaintiff has filed a Reply in further support of the Motion, (Doc. 59). Oral argument is not necessary. Having carefully considered the law, the record, and the arguments of the parties, the Court grants the motion in part and denies the motion in part.

## I. Relevant Factual Background

On February 11, 2016, Plaintiff was shopping at a Hobby Lobby store in Baton Rouge, Louisiana. (Doc 49-2 at 1). Plaintiff went to the Hobby Lobby store to purchase a stool. (*Id.*). Plaintiff found a bar stool that she was interested in purchasing, but the stool collapsed when Plaintiff attempted to sit on it. (*Id.*).

The bar stool required assembly prior to being put in the Hobby Lobby showroom and was assembled by a Hobby Lobby employee at the Hobby Lobby store. (*Id.*). All furniture sold at Hobby Lobby stores is assembled in-store. (Doc. 49-3 at 53). The component parts of the stool were sent to Hobby Lobby by Hillsdale Furniture. (Doc. 57-2 at 2).

Hobby Lobby affixed a temporary price tag to the stool, and Hobby Lobby is the sole entity named on that tag. (Doc. 49-2 at 2; Doc. 49-4 at 5).

## II. Relevant Law

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991).

### B. The Louisiana Products Liability Act ("LPLA")

The Motion concerns Hobby Lobby's alleged manufacturer status and liability under the LPLA. (*See* Doc. 49-1 at 1). The LPLA establishes the "exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52. In relevant part, the LPLA defines a manufacturer as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce.

"Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

La. Rev. Stat. § 9:2800.53.

Under the LPLA, a manufacturer of a product is liable "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." La. Rev. Stat. § 9:2800.54(A). A product is "unreasonably dangerous" under the LPLA if the product is unreasonably dangerous in "construction or composition." La. Rev. Stat. § 9:2800.54(B)(1). A product is "unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. § 9:2800.55.

## III.    Discussion

### A.    Parties' Arguments

Plaintiff's Motion has two components. First, Plaintiff argues that she is entitled to summary judgment on Hobby Lobby's status as a "manufacturer" under the LPLA. (Doc. 49-1 at 3-9). Plaintiff contends that Hobby Lobby is a manufacturer because its employee assembled the stool prior to placing it on the showroom floor, as is true of all Hobby Lobby furniture. (*Id.* at 3). In support of this argument, Plaintiff cites *Coulon v. Wal-Mart Stores, Inc.,* 98-1141 (La. App. 1 Cir. 5/14/99); 734 So.2d 916, *writ denied*, 747 So.2d 1125 (La. 9/24/99), wherein Louisiana's First

Circuit Court of Appeal ruled that the term "manufacturing a product" "indirectly refers to assembling," and an entity that assembles a product for sale is liable as a manufacturer under the LPLA. *Id.* at 919. Plaintiff also contends that Hobby Lobby is a manufacturer because it placed a price tag prominently featuring its name on the stool, thereby "label[ing] the [stool] as its own." (Doc. 49-1 at 5-9).

Second, Plaintiff argues that summary judgment is warranted as to Hobby Lobby's liability. (*Id.* at 9-14). Plaintiff contends that, according to her expert, mechanical engineer Andrew J. McPhate, the stool collapsed because it was improperly assembled. (*Id.* at 11-12; *see also* Doc. 49-6). She argues that this case further "mirrors" *Coulon*, where "[t]he appellate court agreed with the trial court's conclusion that [a] bicycle became unreasonably dangerous in construction or composition as a result of the assembly of the bicycle." (Doc. 49-1 at 12). Plaintiff also anticipates that Hobby Lobby will argue that the stool was properly assembled because "each of the screws provided . . . had the same threads" and could therefore be used in any location; however, Plaintiff contends that this argument is illogical, because, "[i]f that were the case, why then would the bar stool be accompanied by assembly instructions which identified the locations that each different set of screws (which were different sizes) should be placed?" (*Id.* at 13). Plaintiff also argues that there is no evidence that any of the screws "sheared off" when she sat on the stool and, in any event, any screw that did so would be defective such that Hobby Lobby is still liable. (*Id.*).

In opposition, Hobby Lobby contends that its price tag was only placed temporarily on the stool, and Hillsdale Furniture's name was "permanently affixed to the bottom of the chair seat." (Doc. 57 at 2-3). Hobby Lobby also argues that it is not a manufacturer by virtue of assembling the stool: its employees "merely followed simple instructions" to assemble the stool, and all parts,

tools, and screws were provided by Hillsdale Furniture. (*Id.* at 3). Hobby Lobby states that it assembled the stool "as a courtesy to its customers." (*Id.* at 3 n.1).

Hobby Lobby further argues that there are disputed questions of material fact as to its liability. First, Hobby Lobby argues that, when the stool collapsed, it had not yet "left its manufacturer's control" as contemplated by the LPLA. (*Id.* at 4). Otherwise, Hobby Lobby disputes whether there was a deviation from the manufacturer's specifications at the time of the accident, whether the deviation was material, and whether the deviation caused the accident. (*Id.* at 4-8). Hobby Lobby relies on the opinion of its expert, engineer Rick Tonda, that (1) McPhate's "conclusion that the chair was improperly assembled cannot be supported by factual evidence but requires speculation that the missing screws were not the correct ones"; (2) any alleged deviation from the manufacturer's specifications "did not affect the structural integrity of the stool"; and (3) the stool was "overloaded" by Plaintiff's use of the stool, *i.e.*, she likely placed her foot on a "support ring" attached to the lower legs of the stool while "climbing onto" the stool. (*Id.*; *see also* Doc. 57-5 at 1-3, 26).

Plaintiff's Reply generally reiterates arguments previously made. (Doc. 59 at 1-5). Plaintiff contends particularly that "none of the photographs of the stool in evidence show any tags on the stool which were readily visible to [the] purchaser except for the Hobby Lobby price tag," and the bottom of the seat of the stool is concealed by a swivel apparatus. (*Id.* at 2-3). Plaintiff also argues that the "left its manufacturers control" component of the LPLA is not intended to protect a retailer from liability when a product is assembled and placed on a showroom floor where consumers can attempt to use it. (*Id.* at 4). Plaintiff also maintains that Tonda's opinions are based on speculation and are not grounded in "documentation" or "testimony" and that Hobby Lobby

provides "no support for its allegation that [Plaintiff] improperly used the stool prior to its collapse." (*Id.* at 4-5).

### B. Analysis

As discussed *supra*, the LPLA establishes the "exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52. One of the Louisiana legislature's primary purposes in passing the LPLA was to modify the then-applicable rule that a manufacturer could be held strictly liable for injuries caused by a product found to be "unreasonably dangerous per se." *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995). Under the LPLA, a "manufacturer" includes an entity "in the business of manufacturing a product for placement into trade or commerce," as well as a "seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage." La. Rev. Stat. § 9:2800.53. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. *Id.*

Applying these definitions, there is no genuine dispute of material fact that Hobby Lobby is a "manufacturer." Under the plain language of the LPLA, Hobby Lobby's assembly of the stool, and indeed of all the furniture it sells, constitute "manufacturing," *i.e.*, constructing, a product, as well as exercising control over or influencing the "construction or quality" of the stool. That Hobby Lobby used "simple instructions" to assemble the stool or did so "as a courtesy" to customers, (Doc. 57 at 3 & n.1), is unavailing. *Coulon*'s persuasive ruling that "assembling" constitutes "manufacturing" provides additional support for this conclusion. *See* 734 So.2d at 919. Therefore, the Motion will be granted with respect to Hobby Lobby's manufacturer status.[1]

---

[1] Given this ruling, the Court does not address whether the stool's Hobby Lobby price tag might give rise to manufacturer status.

However, summary judgment on the issue of liability will be denied. The issue of liability is heavily fact dependent. The Court finds *Coulon*'s ruling on this issue less persuasive, as this portion of *Coulon* reviewed a trial court's ruling on an issue of fact for manifest error. 734 So.2d at 920-21. Moreover, both Plaintiff and Hobby Lobby have expert witnesses who present different opinions on the issues of whether or not a deviation was present, whether that deviation was material, and whether that deviation was the cause of the injury. There may also be differing opinions as to whether Plaintiff's use of the stool was a reasonably anticipated one. When there are conflicting expert opinions as to key issues in a case, summary judgment is inappropriate. *See, e.g., United States v. Dawn Properties, Inc.*, 2016 WL 5939340, at *3 (S.D. Miss. Oct. 12, 2016) (conflicting expert testimony precluded summary judgment; any alleged deficiencies in opinions were "more properly addressed through the adversary system, not on summary judgment"); *Lascola v. Schindler Elevator Corp.*, 2010 WL 971792, at *3 (E.D. La. Mar. 12, 2010) ("The credibility and weight assigned to each expert's testimony is a function of the jury and may not be completed at this time during the summary judgment process.").

Relatedly, Plaintiff might take issue with the information Tonda considered and the methods he used in arriving at his conclusions, but there has been no motion filed to exclude his expert testimony. In considering such challenges, "[n]otwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, *inter alia*, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

Having reviewed Tonda's report, the Court believes it far from evident that the report should be excluded or that no reasonable juror would accept its conclusions. Instead, Plaintiff's objections go primarily to the weight to be given to the report, and the reliability and believability of one expert over another must be left to the jury. Reasonable minds might also differ as to whether, if Plaintiff did in fact place her foot onto the stability ring while "climbing onto" the stool, doing so was an improper or a reasonably anticipated use of the stool.

## IV. Conclusion

Accordingly, **IT IS ORDERED** that the Motion, (Doc. 49), is **GRANTED** with respect to Hobby Lobby's manufacturer status under the LPLA and **DENIED** as to liability.

Signed in Baton Rouge, Louisiana, on <u>July 26, 2018</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**